UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| HAROLD LINTON | ) | Case No. 11-12258-SSM |
| | ) | Chapter 13 |
| Debtor | ) | |

**MEMORANDUM OPINION**

Before the court is the objection of Thomas P. Gorman, standing chapter 13 trustee, to

confirmation of the plan filed by the debtor on March 29, 2011.  The plan proposes a 100 percent

payment of more than $76,000 in unsecured claims on which the debtor and his wife are jointly

liable while providing only a 5 to 6 percent payout to non-joint unsecured creditors.  A hearing

was held on May 25, 2011, at which the court heard the contentions of the parties and took the

issues under advisement.  For the reasons stated, the court will overrule the objection and

confirm the plan.

<u>Background</u>

Harold Linton—an art professor who is married, but whose spouse has not filed for

bankruptcy relief—filed a voluntary petition in this court on March 28, 2011, for adjustment of

his debts under chapter 13 of the Bankruptcy Code.  On his schedules, he lists $211,215 in

unsecured claims, of which $76,473 are joint with his wife; a combined net income (with his

wife) of $9,199 per month; and monthly expenses of $7,781.  The expenses include $1,636.32

per month for his wife's student loans, which is very nearly equal to her monthly take home pay

of $1,969.  He owns no real estate, and his schedules reflect that he would have only $9,467 in

1

non-exempt assets available for administration in a chapter 7 case.

The plan before the court was filed on March 29, 2011.  It requires the debtor to pay the

chapter 13 trustee $1,576 per month for 60 months, for a total of $94,560.  From this, the trustee

would pay his own statutory commission of 10%, $1,000 in attorney's fees to the debtor's

attorney, and 100 percent of the six unsecured debts on which the debtor and his wife are jointly

liable, with the balance being paid pro rata on account of the remaining unsecured debts, with the

estimated distribution on those claims being 5.7% on the dollar.

<u>Discussion</u>

The trustee objects to confirmation of the plan on the ground that it unfairly discriminates

against non-joint creditors.  As the Supreme Court has observed, a central policy of the

Bankruptcy Code is equality of distribution among creditors of equal priority.  *Begier v. IRS*, 496

U.S. 53, 58, 110 S. Ct. 2258, 2262-63, 110 L. Ed. 2d 46 (1990).  Although a chapter 13 plan is

permitted to "designate a class or classes of unsecured claims," the plan "may not discriminate

unfairly against any class so designated."  § 1322(b)(1), Bankruptcy Code.  Importantly,

however, the plan "may treat claims for a consumer debt of the debtor if an individual is liable

on such consumer debt with the debtor *differently* than other unsecured claims."  *Id.*

(emphasis added).

As one court has explained, the flexibility afforded by the ability to classify claims

promotes the underlying rehabilitative goal of chapter 13 by allowing debtors "to pay their debts

without undue hardship, yet exit from bankruptcy in sounder financial shape than when they

filed for relief."  *In re Harris*, 62 B.R. 391, 391 (Bankr. E.D. Mich. 1986).  Under this standard,

debtors may "discriminate among unsecured creditors where it is beneficial to the debtor to do

so," but subject to the counter-balancing policy "that the debtor's creditors be treated fairly." *Id.*

As this court has previously discussed, a number of tests have emerged to assess whether classification discriminates unfairly. *In re Delauder*, 189 B.R. 639, 643 (Bankr. E.D. Va. 1995). In *Delauder*, this court endorsed a five-part test first articulated by *In re Husted,* 142 B.R. 72 (Bankr. W.D.N.Y. 1992), namely:

> 1. Whether there is a rational basis for the classification;
> 2. Whether the classification is necessary to the debtor's rehabilitation under chapter 13;
> 3. Whether the discriminatory classification is proposed in good faith;
> 4. Whether there is a meaningful payment to the class discriminated against;
> 5. The difference between what the creditors discriminated against will receive as the plan is proposed, and the amount they would receive if there was no separate classification.

*Delauder*, 189 B.R. at 643; *see also In re Martin,* 189 B.R. 619, 627 n.6 (Bankr. E.D. Va. 1995) (holding that court must consider "(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without such discrimination; (3) whether such discrimination is proposed in good faith; and (4) the treatment of the class discriminated against.")  An additional pertinent consideration recognized by this court is "whether the disparate treatment is specifically authorized by some other provision of the Bankruptcy Code." *Delauder*, 189 B.R. at 644.[1]

---

[1] Sometimes discrimination in favor of joint debt may be required to satisfy the best interest of creditors test (also called the liquidation test) set forth in § 1325(a)(4), Bankruptcy Code.  That test requires that unsecured creditors receive payments having a present value at least equal to what they would have received in a chapter 7 liquidation.  If a debtor and his or her non-filing spouse own property as tenants by the entirety, any equity in that property would available for the payment of joint claims but not non-joint claims.  *See Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir. 1985).  Here, however, the schedules do not reflect any property held as tenants by the entirety, and discrimination in favor of joint debts is therefore not necessary to satisfy the best interest of creditors test.

3

Here, of course, at least *some* level of disparate treatment is specifically authorized by §

1322(b)(1) itself, which permits consumer debts on which a non-debtor party is also liable to be

treated "differently" than other unsecured debts.  This provision was added to the Bankruptcy

Code as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. 98-

353.  A leading treatise, quoting the legislative history, explains that Congress was concerned

that "[a]lthough there may be no theoretical difference between codebtor claims and others, there

are important practical differences." 8 Alan Resnick and Henry J. Sommer, Collier on

Bankruptcy ¶ 1322.05[2] (16th ed. 2010).  Certainly, the protection offered by the co-debtor stay

in § 1301(a), Bankruptcy Code—which exists as much for the benefit of the debtor as the non-

filing co-debtor—would be greatly undermined if such co-signed debts were not paid in full,

since one of the grounds for termination of the co-debtor stay is that the plan does not propose to

pay the claim. § 1301(b)(2), Bankruptcy Code; *see* Keith M. Lundin and William H. Brown,

Chapter 13 Bankruptcy, 4th Ed., § 150.1 at ¶ 4 ("Typically, a Chapter 13 debtor wants to

separately classify a co-signed unsecured debt for payment in full to protect the co-signer from

collection.").  Some courts have construed the statutory language—and, in particular, the

"however" that introduces it—as a creating a "carve-out" to the unfair discrimination standard,

thereby automatically sanctioning favored treatment for consumer debts which are co-signed by

another individual.  *In re Monroe*, 281 B.R. 398 (Bankr. N.D. Ga. 2002).  The majority of courts,

however, have rejected the view that § 1322(b)(1) grants carte blanche to pay100% of co-signed

debts without regard to the effect of that treatment on the non-preferred creditors.  *In re

McKown*, 227 B.R. 487 (Bankr. N.D. Ohio, 1998) (collecting cases);  *In re Martin*, 189 B.R.

619, 628 (Bankr. E.D. Va. 1995) (discussing split and holding that debtor had not sufficiently

4

justified plan treatment that paid 100% of debts on which non-filing spouse was liable while

only paying 6.5% to other unsecured creditors).

In this case, the debtor's attorney argues that the 100 percent payment of the joint debt is

reasonable because it furthers the "[d]ebtor's goal of *freeing up some of his wife's debt* so that she

would have funds available to make significant payments on her solely owed debt, something

that she has not been able to do up to this time," and that the debtor's "No. 1 goal in this Chapter

13 filing *is to relieve his wife*, insofar as possible, of debt so that she could whittle away at her

substantial student loan debt." (emphasis added).  The plan funding leaves $84,104 available for

unsecured creditors after payment of the trustee's commission and attorney's fees.  As the plan is

proposed, $76,474 would be applied to full payment of the joint debts, with the $134,742 in non-

joint debts sharing pro-rata in the remaining $7,631, for a dividend of 5.7 cents on the dollar.

Without the separate classification, the full $84,104 would be available to pay $211,215 in

unsecured claims, resulting in a dividend of 39.8 cents on the dollar.

The debtor asserts, however, that $97,901 (or nearly 73%) of the $134,742 in non-joint

debt includes his own student loan debt.  Because student loan debts are nondischargeable absent

a finding of undue hardship, they will ultimately be paid in full, simply not through the plan.

And he provides an analysis showing that the household will be better off (in terms of debts

surviving bankruptcy) if the joint debts are paid in full.  Specifically, he argues that if there were

no classification, $45,883 of the joint debts, although discharged as to the husband, would

remain as liabilities of the wife following completion of the plan.  Added to the $58,243 of the

debtor's own student loans that would not have been paid during the plan, the surviving

household debt burden would be $107,126.  By contrast, as the plan is proposed, only the unpaid

5

portion of the debtor's own student loans would survive. Although this would be much higher—approximately $91,577—than under a plan that paid all unsecured debt ratably, the household would still be better off by approximately $15,549.

Although the non-joint unsecured creditors will receive approximately what they would receive in a chapter 7 liquidation,[2] a 5 to 6 percent dividend is nevertheless hard to characterize as meaningful, and it is certainly far less, both in percentage and dollar terms, than the nearly 40 percent they would receive if the joint claims were not separately classified. On the other hand, the statutory language clearly signals a Congressional intent that a plan—at least to some extent—may discriminate in favor of consumer debt on which a non-debtor is also liable in ways that would otherwise not be permitted. It does appear that the separate classification, even if largely motivated by a desire to assist the debtor's wife, will nevertheless enhance the debtor's rehabilitation by leaving the household with less surviving debt than it would otherwise have. Although unquestionably a close case, the court is satisfied that the degree of discrimination proposed in the plan does not violate Congress's intent in allowing unsecured consumer debts on

---

[2]  The debtor's schedules reflect $9,467 in non-exempt assets. Assuming that value could be fully realized, the net available for unsecured creditors after payment of the chapter 7 trustee's statutory commission of $1,697 would be $7,770. Under the debtor's plan, by contrast, $7,631 would be paid to the non-joint unsecured creditors. Since payment would be made over 60 months, however, the payment stream must be reduced to present value using an appropriate discount rate. Assuming, without deciding, that the "prime-plus" formulation adopted by the Supreme Court in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), would also be appropriate in this context, and using a discount rate equal to the current prime rate of 3.25% plus the mid-point of the additional 1 to 3 percentage points suggested by *Till,* the present value of $7,631 paid over 60 months would only be $6,780. But under the plan, that amount is shared among $134,742 in unsecured claims, while the $7,770 that would be available in chapter 7 would be shared among $211,215 in unsecured claims. The plan therefore results in a present value distribution to the non-joint unsecured creditors of 5.0 cents on the dollar, while a chapter 7 distribution would result in a distribution to them of only 3.7 cents on the dollar.

which a non-debtor is jointly liable to be treated "differently" than other unsecured debts.  For

that reason, the trustee's objection will be overruled.

A separate order will be entered confirming the debtor's plan.


Date: _____          _____
                                       Stephen S. Mitchell
Alexandria, Virginia                   United States Bankruptcy Judge


Copies to:

Harold Linton
11442 Heritage Commons Way
Reston, VA 20194-1032
Debtor

Calvin F. Larson, Esquire
Larson, Lilienthal & Morris
1606 Washington Plaza
Reston, VA 20190
Counsel for the debtor

Thomas P. Gorman, Esquire
300 N. Washington St., Suite 400
Alexandria, VA 22314
Chapter 13 Trustee